IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID EUGENE KINGSLEY, | : | CIVIL ACTION NO. **1:CV-07-1064** |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, David Eugene Kingsley, is seeking review of the decision of the Commissioner of Social Security, ("Commissioner"), that denied his claim for Disability Insurance Benefits, ("DIB"), pursuant to Title II of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433.

**I.   PROCEDURAL HISTORY.**

Plaintiff protectively filed an application for DIB on July 27, 2005, alleging disability since April 15, 2005, due to memory loss, depression, carpal tunnel syndrome, and back, neck, knee and heel impairments. (R. 16). The state agency denied his claim initially and he filed a timely request for a hearing. (R. 41-46). A hearing was held before an Administrative Law Judge, ("ALJ"), on February 1, 2007. (R. 261-90). At the hearing, Plaintiff, represented by counsel, a vocational expert, ("VE"), and a medical expert, ("ME"), testified. (R. 264-90). The ALJ issued a partially favorable decision on February 9, 2007 and awarded Plaintiff DIB beginning on March 1, 2006. (R. 11-26).

Plaintiff requested review of the ALJ's decision. The Appeals Council denied his request on April 25, 2007, thereby making the ALJ's decision the final decision of the Commissioner. (R. 5-7). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 10 and 11).

**II.     STANDARD OF REVIEW.**

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

**III.    DISABILITY EVALUATION PROCESS.**

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (2004). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged

in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  *See* 20 C.F.R. § 404.1520.

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was disabled as of March 1, 2006.  (R. 14-24).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful work activity since his alleged disability onset date, April 15, 2005.  (R. 16).  At step two, the ALJ concluded that, prior to March 1, 2006, Plaintiff's hypertensive cardiovascular disease and degenerative arthritic changes in the cervical and lumbar spines were "severe" impairments within the meaning of the Regulations.  (R. 16).  The ALJ also noted that since March 1, 2006, Plaintiff was diagnosed with bilateral carpal tunnel syndrome, a meniscus tear of the left knee and herniated discs in the lumbar spine with moderate to severe neural foraminal stenosis.  (R. 16).

At step three, the ALJ found that, since the alleged disability onset date, Plaintiff has not had an impairment, or combination of impairments, severe enough to meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (R. 18).

At step four, the ALJ found that, since the alleged onset date of disability, Plaintiff has been unable to perform any of his past relevant work.  (R. 22).  At step five, the ALJ found that, prior to March 1, 2006, Plaintiff has had the residual functional capacity, ("RFC"), to perform light duty work.  (R. 18-21).  The ALJ then determined that beginning on March 1, 2006, Plaintiff has had the RFC to lift and carry no more than two to three pounds, he is unable to do prolonged sitting, standing or walking, he cannot perform work that requires fine manipulation and can only occasionally grasp, and is unable to sustain work on a regular, continuing basis.  (R. 21-22).

Thus, the ALJ determined that Plaintiff was not disabled prior to March 1, 2006, but became disabled on March 1, 2006 and continued to be disabled through the date of the

ALJ's decision. (R. 24).

## IV. BACKGROUND.

### A. Factual Background.

Plaintiff was born on March 15, 1952 and was fifty-three (55) years old at the time of the ALJ's decision. (R. 265, 270). Therefore, he is considered a "person of advanced age" under the Regulations. 20 C.F.R. §§ 404.1563(e), 416.963(e). Plaintiff has a high school education. (R. 265). He has past work experience as an owner of a furniture moving business, a logger and a truck driver. (R. 265-66, 288). Plaintiff stated that the main reason he stopped driving truck was due to his forgetfulness. (R. 268).

Vocational expert, Nadine Henzes, testified based on the *Dictionary of Occupational Titles*. (R. 270). Ms. Henzes stated that Plaintiff is a person of advanced age and she classified his past work as a truck driver as heavy duty work. (R. 270-71).

Medical expert, Dr. Anthony Galdieri, testified that Plaintiff did not have a severe impairment prior to March 1, 2006. (R. 272-74).

During the day, Plaintiff testified that he sleeps and watches television. (R. 282). He mows the lawn but does no other household chores. (R. 283).

### B. Medical Background.

Plaintiff underwent a chest x-ray on June 24, 2005 which revealed a normal heart, clear lungs and no active disease. (R. 144).

On July 20, 2005, Plaintiff took a thallium stress test. (R. 162-63). The test results were unremarkable. (R. 163).

A brain MRI on July 28, 2005 was normal. (R. 164).

Plaintiff suffers from tendinitis of the left hand and he underwent occupational therapy in July and August 2005. (R. 145-61). Plaintiff was successfully discharged from therapy after he met his goals. (R. 145).

In August 2005, Plaintiff treated with Dwight D. Stapleton, M.D., for his chest pain. (R. 166-67). Dr. Stapleton recommended a cardiac catheterization and Plaintiff underwent the procedure on August 4, 2005. (R. 165, 167, 173-74). The cardiac catheterization

revealed mild diffuse coronary plaquing without significant stenosis (likely noncoronary symptoms), normal left ventricular systolic function, mildly elevated left ventricular diastolic pressure and successful Angio-Seal right femoral artery. (R. 174). It was further noted that the cardiac catheterization revealed no obstructive coronary disease. (R. 176).

An ultrasound of Plaintiff's abdomen on August 10, 2005 showed no significant abnormalities. (R. 143).

Plaintiff suffers from memory problems and treated with neurologist Su Kanchana, M.D., Ph.D. (R. 177-79, 215-16). On September 7, 2005, Dr. Kanchana's impression was that Plaintiff suffered from pseudodementia.[1] (R. 178, 216). Upon physical examination, Plaintiff's affect was flat, his immediate and short-term recalls were good, he was oriented to all spheres, he could do calculations, his Mini-Mental State score was 30/30,[2] he performed all tasks without difficulty, he had good strength, symmetrical reflexes, normal gait with nice tandem and heel walking and good posture. (R. 178, 215-16). Dr. Kanchana stated that she did not see any true signs of dementia, though Plaintiff was depressed with good insight. (R. 178, 216). Dr. Kanchana encouraged Plaintiff to continue his treatment for depression and to become more physically active. (R. 178, 216).

Plaintiff treated with Richard T. Husband, D.O., for his depression. (R. 180). On September 15, 2005, Dr. Husband diagnosed depression (with some improvement),

---

[1] Pseudodementia is "[a] condition resembling dementia but usually due to a depressive disorder rather than brain dysfunction." *Stedman's Medical Dictionary*, 1470 (27th ed. 2000).

[2] The Mini-Mental State Exam is "a brief, quantitative measure of cognitive status in adults. It can be used to screen for cognitive impairment, to estimate the severity of cognitive impairment at a given point in time, to follow the course of cognitive changes in an individual over time, and to document an individual's response to treatment." *See Mini-Mental State Exam* at http://www.minimental.com/

5

hypertension, hyperlipidemia,[3] arthralgia[4] and myalgia[5] of uncertain etiology in the lower extremities, daytime fatigue and obesity. (R. 180).

Plaintiff began treating with Tricia T. Williams, M.D., in June 2005. (R. 183). On October 10, 2005, Dr. Williams completed a Medical Source Statement of Plaintiff's Ability to Perform Work-Related Activities. (R. 183-87). Dr. Williams found that Plaintiff had no limitations in lifting, carrying, standing, walking, sitting, pushing or pulling. (R. 186). She also found no postural, other physical or environmental limitations. (R. 187). Dr. Williams stated that Plaintiff was unable to work and drive a truck due to mental status changes and memory loss. (R. 187).

On October 18, 2005, J.J. Kowalski, M.D., a state agency psychiatrist, examined Plaintiff and completed a Psychiatric Review Technique Form. (R. 190-203). Dr. Kowalski examined Plaintiff's impairments pursuant to Listing 12.04, Affective Disorders, and determined that his impairments were not severe. (R. 190). Dr. Kowalski found that Plaintiff suffered from depression, however pursuant to Listing 12.04(B), he found that Plaintiff had no restriction of activities of daily living, no difficulties maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (R. 193, 200).

A Disability Determination Services, ("DDS"), physician completed a Physical RFC Form on October 19, 2005. (R. 204-211). The doctor found that Plaintiff could occasionally lift and carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk and sit for six hours in an eight-hour workday, and could push and pull unlimitedly. (R. 205). The doctor found no other limitations. (R. 206-08).

---

[3] Hyperlipidemia, or lipemia, is "[t]he presence of an abnormally high concentration of lipids in the circulating blood." *Stedman's Medical Dictionary*, 851, 1019 (27th ed. 2000).

[4] Arthralgia is "[p]ain in a joint, especially one not inflammatory in nature." *Stedman's Medical Dictionary*, 149 (27th ed. 2000).

[5] Myalgia is muscular pain. *Stedman's Medical Dictionary*, 1167 (27th ed. 2000).

On November 17, 2005, an x-ray of the cervical spine revealed degenerative arthritic change with narrowing of the vertebral disc space at C5-6 and C6-7. (R. 141). An x-ray of the lumbar spine revealed degenerative arthritic change with narrowing of the intervertebral disc space at L4-5. (R. 141). An x-ray of the bilateral heels revealed a large bony spur arising from the base of the calcaneus. (R. 141-42).

Plaintiff treated with neurosurgeon Carson J. Thompson, M.D., beginning in April 2006. (R. 219-33). On April 10, 2006, Plaintiff underwent an EMG and nerve conduction study. (R. 217-18). The study was moderately to markedly abnormal, consistent with bilateral carpal tunnel syndrome, right greater than the left. (R. 218-19). Plaintiff underwent a carpal tunnel release of the right wrist on May 1, 2006 and of the left wrist on July 17, 2006. (R. 226-28).

An MRI of Plaintiff's left knee on October 3, 2006 revealed a tear of the posterior horn of the medial meniscus. (R. 252).

Plaintiff underwent an orthopedic consultation with Russell Zelko, M.D., on October 23, 2006. (R. 250-51). Dr. Zelko diagnosed degenerative arthritis of the right knee, with an occult probably degenerative posterior horn meniscal tear. (R. 251). Dr. Zelko recommended conservative treatment consisting of physical therapy and over-the-counter anti-inflammatory medication. (R. 251).

An MRI of Plaintiff's lumbar spine on December 20, 2006 showed disc herniations at T12-L1 and a small disc bulge at L3-L4. (R. 238).

On January 3, 2007, Plaintiff underwent an upper GI endoscopy which was essentially normal with evidence of reflux esophagitis.[6] (R. 253).

## V. DISCUSSION.

### A. Whether the ALJ erred by failing to properly address the Plaintiff's work history.

---

[6] Reflux esophagitis is "inflammation of the lower esophagus from regurgitation of acid gastric contents, usually due to malfunction of the lower esophageal sphincter." *Stedman's Medical Dictionary*, 619 (27th ed. 2000).

Plaintiff argues that the ALJ failed to properly address his work history and that his disability onset date should be amended to April 15, 2005. (Doc. 10 at 11-12). Plaintiff states that the ALJ did not place sufficient emphasis on the fact that Plaintiff had been working from approximately 1967 to 2005. Plaintiff asserts that it is not sufficient for the ALJ to say that substantial evidence supports his decision; he must, rather, scrutinize the record as a whole. *See Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979). Defendant states that the ALJ acknowledged Plaintiff's work history throughout his decision. (Doc. 11 at 12). Defendant further states that the ALJ considered the medical evidence and determined that, despite Plaintiff's work history, his allegations of disabling functional limitations before March 1, 2006 were not entirely credible. (Doc. 11 at 12) (R. 20).

This argument goes to Plaintiff's credibility. The ALJ found that Plaintiff's testimony with regard to his symptomatology and limited functional capacity was overstated and not consistent with the medical evidence prior to March 1, 2006. (R. 20). While the ALJ did not find Plaintiff to be completely credible, he found some of Plaintiff's symptomatology to be believable.

At step four of the sequential evaluation process, the ALJ found that, since the alleged onset date of disability, Plaintiff has been unable to perform any of his past relevant work. (R. 22). The ALJ noted that Plaintiff has past relevant work experience as a truck driver. (R. 22). At the hearing, the ALJ informed Plaintiff that recounting his entire work history beginning in the 1970s was too remote and that the ALJ was limited to considering the previous fifteen years. (R. 287-88). Plaintiff testified that he stopped working as a truck driver because "a couple of times I left and forgot where I was going." (R. 266). Plaintiff stated that he no longer believed that he was a safe driver due to his pain and inability to concentrate. (R. 266). Plaintiff also stopped driving a car for a period of time because he did not think that he was a safe driver. (R. 266-67). The ALJ determined that Plaintiff was not capable of working as truck driver before March 1, 2006, however, the ALJ determined that Plaintiff was capable of performing light duty work prior to March 1, 2006.

Regarding this argument that the ALJ improperly discounted the Plaintiff's work

history and failed to give his testimony substantial credibility per *Rieder v. Apfel*, 115 F. Supp. 2d 496 (M.D. Pa. 2000), we find that the ALJ's analysis of this aspect of the case is consistent with his examination of the record as a whole.  In *Rieder*, the court examined the record, and noted that "the plaintiff was always working or looking for a new job.  When a claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility."  *Rieder*, 115 F. Supp. 2d at 505 (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979)).

In the present matter, the ALJ's credibility determination is in accord with the record as a whole.  The ALJ properly considered all of the evidence in the record regarding Plaintiff's prior work history and his findings are supported by the record.  Although the ALJ found that Plaintiff's testimony was not entirely credible before March 1, 2006, he found that after March 1, 2006 Plaintiff's testimony was credible and he was unable to work.  (R. 20-22).  The ALJ stated that the medical evidence beginning March 1, 2006 supports Plaintiff's allegations regarding his symptoms and limitations.  (R. 22).  Substantial evidence supports the ALJ's finding that Plaintiff's disability began on March 1, 2006.

### B. Whether the ALJ erred by failing to accord significant weight to the opinions of the treating physicians.

Plaintiff argues that the ALJ failed to properly address the opinions of the treating physicians regarding his cardiac, back, knee, heel and wrist impairments.  Plaintiff further argues that he also suffered from depression and a cognitive disorder in April 2005.  He states that his impairments were present in 2005, not only beginning on March 1, 2006.  (Doc. 10 at 12-15).  Specifically, Plaintiff states that the ALJ failed to give sufficient weight to the opinions of Dr. Kanchana, Dr. Husband, Dr. Williams, Dr. Choi and Dr. Zelko.

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  *Plummer* [v. *Apfel*, 186

9

> F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones [v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991)]; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster [v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)]. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent [v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)].

*Id*. at 317-318. Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2).

Social Security Regulation 96-2p states that "a medical opinion from a treating source 'must be adopted' when four characteristics are present: (1) the opinion must come from a 'treating source' as defined in the regulations, (2) it must be a 'medical opinion' as defined in the regulations, (3) the medical opinion must be 'well supported' by 'medically acceptable' clinical diagnostic techniques, and (4) the medical opinion must be 'not inconsistent' with other 'substantial evidence' in the record." *Williams v. Barnhart*, 211 Fed. App'x 101 at **2 (3d Cir. 2006) (quoting SSR 96-2p).

Plaintiff treated with Dr. Kanchana for his memory problems in September 2005. (R. 177-79, 215-16). Dr. Kanchana's impression was that Plaintiff suffered from pseudodementia. (R. 178, 216). Upon physical examination, Plaintiff's affect was flat, his immediate and short-term recalls were good, he was oriented to all spheres, he could do calculations, his Mini-Mental State score was 30/30, he performed all tasks without difficulty, he had good strength, symmetrical reflexes, normal gait with nice tandem and heel walking and good posture. (R. 178, 215-16).

Dr. Kanchana noted that, although Plaintiff complained of memory loss and cognitive

dysfunction, his Mini-Mental State Exam was "completely normal" and he performed the task with "impressive ease." (R. 178, 216). Thus, Dr. Kanchana "did not see any true signs of dementia." (R. 178, 216). Dr. Kanchana noted that although Plaintiff was depressed, he had good insight. (R. 178, 216). Dr. Kanchana encouraged Plaintiff to continue his treatment for depression and to become more physically active. (R. 178, 216). She stated that there was no medication to prescribe for Plaintiff because he did not have dementia. (R. 178, 216). Dr. Kanchana also stated that there was no need for Plaintiff to return for a follow-up. (R. 178, 216).

The ALJ considered Dr. Kanchana's opinion and noted that Plaintiff reported that Lexapro helped improve his depression. The ALJ also noted that Plaintiff scored a perfect 30/30 on the Mini-Mental State Exam and performed the tasks without difficulty. (R. 17). Regarding Plaintiff's heel impairments, the ALJ noted that Dr. Kanchana found that Plaintiff had a normal gait. (R. 18). Regarding Plaintiff's back impairment, the ALJ referenced Dr. Kanchana's note that Plaintiff had intact strength. (R. 21). Defendant argues that the ALJ properly relied upon Dr. Kanchana's report to support his finding that Plaintiff was not disabled before March 1, 2006. (Doc. 11 at 15-16).

With regard to the opinion of Dr. Husband, Plaintiff does not state how the ALJ failed to accord proper weight to his opinion. Plaintiff's brief does not mention Dr. Husband, except in the caption of his argument and a statement that Plaintiff was suffering from depression in April 2005. (Doc. 10 at 14) (R. 180).

Dr. Husband treated Plaintiff for his depression in September 2005. (R. 180). Dr. Husband noted that Plaintiff was improving with Lexapro, though he still had trouble sleeping and he complained of aches in his legs. (R. 180). Dr. Husband noted that Plaintiff had been disabled for over a year and was not truck driving due to depression and other somatic complaints. (R. 180). On physical examination, Plaintiff appeared well, was in no distress, his heart was regular, lungs were clear and his extremities had intact pulses with no edema. (R. 180). As stated above, Dr. Husband diagnosed depression (with some improvement), hypertension, hyperlipidemia, arthralgia and myalgia of uncertain etiology in

the lower extremities, daytime fatigue and obesity. (R. 180). He recommended a follow-up. (R. 180).

Plaintiff next lists Dr. Williams as a treating source whose opinion should have been accorded significant weight, however in his brief, Plaintiff only references transcript pages from Dr. Williams' assessment. (Doc. 11 at 14) (R. 183-85).

As stated, Dr. Williams completed a Medical Source Statement on October 10, 2005. (R. 183-87). Dr. Williams found that Plaintiff had no limitations in lifting, carrying, standing, walking, sitting, pushing or pulling and no other limitations. (R. 186-87). Dr. Williams further stated that Plaintiff was unable to drive a truck due to his mental status changes and memory loss. (R. 187).

Dr. Williams noted that there were clinical signs of congestive heart failure consisting of chest pain and shortness of breath with exertion. (R. 183). Dr. Williams found that there was evidence of an emotional or cognitive disorder and that Plaintiff reported poor memory and forgetfulness while driving. (R. 184). She noted that Plaintiff scored a 29 out of 30 on the Mini-Mental State Exam.[7] (R. 184).

In his decision, the ALJ evaluated Dr. Williams' opinion that Plaintiff was unable to drive a truck due to forgetfulness. (R. 17). The ALJ considered Dr. Williams' assessment but did not give it controlling weight, finding that it was based on Plaintiff's subjective complaints and was not consistent with the other medical evidence of record. (R. 17). Specifically, the ALJ noted that Dr. Williams' assessment was not consistent with Plaintiff's scores on the Mini-Mental State Exam or with the medical expert's testimony at the ALJ hearing. (R. 17). As stated, medical expert, Dr. Galdieri, testified that Plaintiff did not have a severe impairment prior to March 1, 2006. (R. 272-74). Dr. Galdieri stated that Plaintiff underwent a Mini-Mental State Exam, but it was then noted that Plaintiff did not have any signs of true dementia. (R. 272-73). Dr. Galdieri also noted that the evidence reveals that

---

[7] A score between 24 and 30 on the Mini-Mental State Exam is in the "normal" range. *See About.com: Alzheimer's Disease* at http://alzheimers.about.com/od/diagnosisofalzheimers/a/MMSE.htm

Plaintiff's depression improved. (R. 273).

As stated, Plaintiff underwent x-rays of the cervical and lumbar spines and bilateral heels on November 17, 2005. (R. 141-42). Duk Choi, M.D., was the radiologist that interpreted Plaintiff's November 2005 x-rays. (R. 141-42). Thus, Dr. Choi is not a "treating source" as defined in the Regulations and his opinion is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527, 416.927. The cervical and lumbar spine x-rays revealed degenerative changes and the bilateral heel x-ray revealed a heel spur. (R. 141-42). The ALJ considered these x-rays when rendering his decision. (R. 20-21).

Plaintiff underwent an orthopedic consultation with Dr. Zelko on October 23, 2006. (R. 250-51). Dr. Zelko diagnosed degenerative arthritis of the right knee. (R. 251). As Defendant states, Dr. Zelko rendered his opinion in October 2006, seven months after March 2006, the date the ALJ determined that Plaintiff was disabled. (Doc. 11 at 22). Thus, Defendant argues that the ALJ relied upon Dr. Zelko's opinion in determining that Plaintiff was disabled after March 1, 2006. (Doc. 11 at 22). Further, Dr. Zelko never assessed Plaintiff's functional limitations and therefore did not render a medical opinion.

The ALJ further noted that an October 3, 2005 MRI of Plaintiff's left knee revealed a tear of the posterior horn of the meniscus and chondromalacia patella with small to moderate joint effusion. (R. 22). The ALJ noted that Dr. Zelko recommended conservative treatment and he considered Dr. Zelko's opinion when making his disability determination. (R. 22).

The ALJ did not substitute his judgment for that of the treating physicians. The ALJ considered all of the evidence of record and made a determination after analyzing all of the evidence. Substantial evidence supports the ALJ's evaluation of the treating source opinions.

**VI.    RECOMMENDATION.**

Based upon the foregoing, it is respectfully recommended that Plaintiff's appeal be **DENIED**.

                                                                                 s/ Thomas M.  Blewitt
                                                                                 **THOMAS M. BLEWITT**
                                                                                 **United States Magistrate Judge**

**Dated: May 2,  2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID EUGENE KINGSLEY, | : | CIVIL ACTION NO. **1:CV-07-1064** |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **May 2, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 2, 008**